[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff and the defendant intermarried in Middletown, Connecticut CT Page 9478 on March 12, 1993. The plaintiff has resided continuously in this state for at least 12 months prior to the filing of this complaint. There have been only two minor children born to the plaintiff since the date of her marriage to the defendant, to wit; Molly Ann Ferrari, born June 5, 1993 and Anna Julia Ferrari, born January 5, 1996. No other minor children have been born to the plaintiff since the date of the marriage. Neither party has been the recipient of state aid or other form of public assistance and no individual or agency is presently responsible for the support of any party.
Based upon the relevant, admissible and credible evidence presented herein and all reasonable inferences therefrom, and based upon the statutory criteria provided to govern the equitable distribution orders entered herein, the following constitute the findings of fact and conclusions of law with respect to this matter.
The plaintiff is about 30 years of age and the defendant is 45. A very few years after these parties were married, the marriage began to gradually break down. The court finds that there was evidence that he physically, psychologically and emotionally abused her and that they began growing apart very few years after they were married. Both of them used alcohol, sometimes to an extent greater than was good for both of them, but its effect upon him and his condition brought about the breakdown of the marriage. She felt that he suffers from Agoraphobia and other related problems of depression. At the time she filed this action for divorce, he checked himself into the St. "Francis-Elmcrest facility in Portland. He was there for a period of time until his emotional problems were alleviated.
He had at one point thrown all of her clothing out of the house and desecrated some of it with obscenities. From his testimony, the court finds that, at least to his mind set, the marriage broke down at the time that he purchased a second car for her use. He was not overly social and they had friends but he felt as though they were invading his home at times. Before the second car arrived, "she would, on occasions, drive him to work so that she would have an automobile to take care of evening events in her life or the children's lives and including some late afternoon school events. "He has worked and is working the second shift, 3:30 p.m. to midnight, and thus the single car would not be available to her until the second car was purchased. The court finds that this was not an unreasonable request on her part and actually was a necessary item in order that she and the children not live socially reclusive lives. Their age differential also played a part in the breakdown of the marriage. He didn't feel that she and the children needed to be out of the home, and at one period of time did not approve of anyone other than family members acting as babysitters for the children. The court recognizes, however, CT Page 9479 that at this time his attitude with respect to this part of his children's lives has moderated. The conclusion of the court is that her conduct contributed 40% to the marriage breakdown and his conduct contributed 60%.
The parties have mediated and agreed to a joint custody order which the court approves. Accordingly, it is ordered that the parties shall share joint custody of the minor children. The children shall have their principle place of residence with their mother. The children shall have visitation with their father from approximately 3:00 p.m., or after school on each Friday until Monday morning at 9:00 a.m. or when school starts. They may visit with their father at such other times as the parties agree. Whenever the mother works on schedule or additional workday, the father may care for the children overnight returning the children the next day, if this is possible and in "accordance with his work schedule. They shall share holidays and the children's school vacations. It is noted herein that paternal grandmother plays a substantial role in effecting the visitation periods with the father insofar as pick-up of the children on Friday and having care and control of them until their father finishes work on that day which is usually midnight. Although he has taken some half vacation days, he does not arrive home until 7:30 or 8:00 in the evening at which time the children are ready to go to bed. The court does not find that this is a shared custodial arrangement and accordingly declines the request of the father for a deviation from the guidelines of support on that basis.
The defendant-father shall pay to the plaintiff-mother the sum of $192.60 a week as support of the minor children by contingent Wage Withholding Order. In addition, he shall pay 50% of any un-reimbursed medical expenses incurred on behalf of the minor children for reasonably medical treatment.
The 401(k) account of the defendant was approximately $7,000.00 at the time of the marriage and at this time has a present value of $25,000.00, or a marital increment of $18,000.00. From this account, the court orders the sum of $10,800.00 be set over and assigned to the mother by way of a nontaxable transfer or Qualified Domestic Relations Order, whichever shall apply.
The pension fund of the defendant is set over and assigned to be his absolutely.
The real estate which the court finds to have a value of $150,000.00 and a mortgage of $51,000.00 is set over to the plaintiff-mother to be hers absolutely. She shall undertake to pay and hold the defendant harmless in connection with any liability on any of the ownership or CT Page 9480 operating expenses of the house including mortgage, insurance and taxes.
In order to allow the mother an adjustment period of two years in order to ascertain and undertake any reasonably available programs to increase her earning capacity and job skills, the court orders that the defendant pay to her, for a period of two years. the sum of $65.00 per week as "periodic alimony. Said sum shall be non-modifiable as to term and/or amount.
The custodial accounts for the children are ordered transferred to the defendant-father who shall maintain them for the benefit of the children and not invade them for his own account.
The father shall maintain existing life insurance in the amount of $150,000.00 naming the children an irrevocable beneficiaries during the period of their minority.
Each of the parties is allowed one child for a deduction, if they qualify under Federal Income Tax regulations, the father shall take Molly as a deduction and the mother shall take Anna.
All contents of the household are set over and assigned to the plaintiff-mother to be hers absolutely with the exception of any very personal items or personal property that should be transferred to the husband if they are his.
Any other debts as listed on the financial affidavits of the respective parties are to be paid by them holding the other harmless in connection therewith. The 1998 VW Jetta is set over to the plaintiff who shall hold the defendant harmless from any liability on the debt associated with that vehicle, and the 1999 Ford Ranger pickup is set over to the defendant and he shall hold the plaintiff harmless in connection with any debt associated with said vehicle.
The plaintiff shall be responsible for her own health insurance and may avail herself of any COBRA rights through the husband's place of employment.
Having found that the marriage has broken down irretrievably, a decree is entered dissolving the marriage.
It is so ordered.
HIGGINS, J.